# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

=======================================
                                                           *
In Re:                                                     *
                                                           *  Chapter 13
    MARIE K. DESSOURCES,                 *  No.  09-30997-HJB[1]
                                                           *
                    Debtor  *
                                                           *
=======================================

### DECISION ON DEUTSCHE BANK NATIONAL TRUST COMPANY MOTION FOR RELIEF FROM STAY

Marie K. Dessources ("Debtor") filed her petition for relief under Chapter 13 on June 11, 2009. Thereafter, Deutsche Bank National Trust Company, as assignee of a mortgagee ("Movant"), filed this Motion for Relief from the Automatic Stay (the "Motion").[2] Debtor filed an opposition to the Motion ("the Opposition").[3] After a hearing, I took the Motion under advisement[4] and the parties filed supplemental memoranda. For the reasons set forth below, I now find that at an evidentiary hearing will be necessary.

*Background*

Except as noted below, there are no disputes between the parties as to the

---

[1] Judge Boroff recused himself from this motion only and transferred it to me. He remains the judge of record as to the remainder of the case. *See* Docket No. 115.

[2] Docket No. 87.

[3] Docket No. 93.

[4] Docket No. 154.

operative facts.  I have drawn this discussion from the assertions contained in the Motion and the Opposition as well as the pleadings of Debtor's three bankruptcy filings.[5]

On or about October 21, 2005, Debtor granted a mortgage to a predecessor of Movant (the "Mortgage"), using the standard form for a single family mortgage.  The acknowledgment, as reproduced below, was not fully completed:

> COMMONWEALTH OF MASSACHUSETTS   County ss: Suffolk
> On this 21 day of October 2005, before me, the undersigned notary public, personally appeared Marie K. Dessources, proved to me through satisfactory evidence of identification, which was/were [          ], to be the person(s) whose names(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.
> (Seal)                                              s/Robert E. Rainville
>                                                           Notary Public
>
> > Robert E. Rainville
> > Notary Public
> > Commonwealth of Massachusetts
> > My Comm. Expires Mar. 3, 2011

As indicated by the brackets, the acknowledgment does not specify the "satisfactory evidence of identification."[6]

Debtor's first bankruptcy case was filed under chapter 13 on October 4, 2007.[7]  It appears to have been a skeleton filing.  Although the time for filing missing documents was extended,[8] the documents were never filed, and the case was dismissed on November 15,

---

[5] I may take judicial notice of the documents in the Debtor's file and those in the Court's own records in other, but interrelated, proceedings. *In re* Hyde, 334 B.R. 506, 508 n.2 (Bankr. D. Mass. 2005).

[6] Docket No. 93, Ex. Mortgage.

[7] *In re* Dessources, No. 07-30248 ("First Case").

[8] First Case, Docket No. 19.

2007.[9]

Debtor's second petition under chapter 13 was filed on December 6, 2007.[10] In that case she filed several plans which proposed to pay the Mortgage as a secured debt.[11] Movant's predecessor moved for relief from stay on March 26, 2008.[12] After a number of continuances, the parties reported that matter settled on June 25, 2008, and an order was entered requiring a stipulation to be filed within 21 days.[13] After extension was granted, the stipulation and a motion to approve it were filed on July 30, 2008.[14] However, the stipulation was never approved as the Second Case was dismissed for failure to make plan payments on August 5, 2008.[15] No plan was ever confirmed in the Second Case.

On June 11, 2009 Debtor filed the present petition under chapter 13.[16] Before adopting her present position that the Mortgage is invalid, Debtor filed several plans which recognized the Mortgage as a secured obligation.[17] No plan has been confirmed to date.

The Motion was filed on January 15, 2010 seeking relief from the automatic stay. In it, the Movant asserted that Debtor was in arrears for one pre-petition and five post-

---

[9] First Case, Docket No. 23.

[10] *In re* Dessources, No. 07-30512 ("Second Case").

[11] Second Case, Docket Nos. 21, 52.

[12] Second Case, Docket No. 30.

[13] Second Case, Docket No. 117.

[14] Second Case, Docket Nos. 131, 132.

[15] Second Case, Docket No. 136.

[16] *In re* Dessources, No, 09-30997 ("Third Case")

[17] Third Case, Docket Nos. 24, 76, 80.

petition payments and that existing liens exceeded the value of the property. Debtor opposed the Motion, challenging the validity of the Mortgage on the basis that the acknowledgment was fatally defective.

*Positions of the Parties*

Debtor's opposition centered on the asserted defect in the notary clause of the Mortgage.[18] In response to those allegations, Movant challenged Debtor's standing "to maintain an avoidance action" as a chapter 13 debtor and, assuming standing, asserted that the alleged defects in the mortgage are not fatal to its claim of a secured position under the mortgage.[19] It also raised the issue of judicial estoppel, as Debtor's plans in prior cases had not disputed the validity of the Mortgage and had in fact proposed to pay it under the terms of a stipulation between the parties. In response, Debtor asserts its right to make the arguments in its Opposition, the fact that judicial estoppel should not apply, and reiterates her position as to the materiality of the defect in the notary clause.[20]

*Discussion*

*Standing*

Movant asserts that "this chapter 13 debtor does not have standing to maintain an avoidance action based on the plain language of 11 U.S.C. §§ 1303 and 522(h)" and two

---

[18] Debtor also raised questions regarding the value of the property and the outstanding amount owed to Movant. As will be discussed below, these matters are not ripe for determination.

[19] Brief in Support of Motion for Relief from the Automatic Stay, Docket No. 169 ("Movant's Brief").

[20] Debtor's Response to Memorandum Filed by Deutsche Bank National Trust Company, Docket No. 173 ("Debtor's Response").

4

of my prior decisions.[21] Debtor's response is that she "is merely attempting to hold Deutsche Bank to the necessary proof required for it to seek relief from stay."[22] Further, says Debtor, Movant has filed a proof of claim as a secured creditor and "the Debtor's objection in this case is essentially objecting to this claim."[23]

Debtor has the better of the arguments. In order to prevail on the Motion, Movant must show that it lacks adequate protection "of in interest in property"[24] or that it seeks relief "with respect to a stay of an act against property."[25] Once the Movant has established its prima facie case, it is Debtor's burden to demonstrate that Movant is not entitled to relief.[26] This is not the situation that was before me in the cited decisions, where a debtor sought to exercise a trustee's avoidance powers. Movant's argument must fail.

*Judicial Estoppel*

Movant asserts that judicial estoppel should be invoked to prevent Debtor from now challenging the validity of the Mortgage:

> In this case, by now arguing that the Mortgage is void, and refusing to offer any payment on it, the Debtor is taking positions clearly inconsistent with her prior filings. In [the Second Case], the Debtor obtained an automatic stay by filing her petition on December 6, 2007, and filed plans on January 18, 2008

---

[21] Movant's Brief at *6ff*, citing Callanan v. Int'l Fidelity Ins. Co. (*In re* Callanan), 190 B.R. 137, 138 (Bank. D. Mass. 1995) and Miller v. Brotherhood Credit Union (*In re* Miller), 251 B.R. 770, 773 (Bankr. D. Mass. 2000).

[22] Debtor's Response at 4.

[23] *Ibid*.

[24] 11 U.S.C. § 362(d)(1).

[25] 11 U.S.C. § 362(d)(2).

[26] 11 U.S.C. § 362(g)(2).

> ... and May 6, 2008 providing for payment of the debt secured by the Mortgage and Note. She also reached a seal for a stipulation to repay amounts due to the mortgagee on June 25, 2008.... In the present case, the Debtor obtained an automatic stay by the filing of her petition on June 11, 2009, and filed versions of chapter 13 plans on July 7, 2009,... January 11, 2010,... January 13, 2010,... all providing for the payment of the debt secured by the Mortgage and Note. The position that the Debtor is now taking with respect to her lack of obligation to pay the Mortgage as a secured claim is completely inconsistent with her prior actions. Despite the fact that the loan secured by the Mortgage and Note was originated in October 2005 and has the benefit of modification, she has invoked the protection of this Court in three Chapter 13 cases since October 4, 2007, including the instant case, and has derived an unfair benefit from previous positions taken.[27]

The United States Court of Appeals for the First Circuit has provided us with this formulation of the application of the doctrine of judicial estoppel:

> The contours of the doctrine are hazy, and there is no mechanical test for determining its applicability. Each case tends to turn on its own facts. It is, however, widely agreed that, at a minimum, two conditions must be satisfied before judicial estoppel can attach. First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position.[28]

It is the second element that trips up Movant. No plan was ever confirmed in any of Debtor's cases, so there was no judicial acceptance of Debtor's original position that the Mortgage was a valid secured claim. The fact that Debtor has had the advantage of the automatic stay is independent of the current dispute and does not affect the conclusion. Judicial Estoppel does not apply here.

*The "defective" acknowledgment*

The acknowledgment clause, quoted above, has a blank in the space intended for

---

[27] Movant's Brief at 12-13.

[28] Alternative System Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (citations omitted).

a description of the form of identification offered by the affiant.  Debtor contends that this is a fatal error, relying primarily upon Judge Feeney's decision in *Agin v. Mortgage Electronic Registration Systems, Inc. (In re Giroux)*.[29]  Movant, of course, disagrees. Resolution of the conflict requires a close study of applicable Massachusetts law.

The Massachusetts statute provides that

> No deed shall be recorded unless a certificate of its acknowledgment or of the proof of its due execution, made as hereinafter provided, is endorsed upon or annexed to it, and such certificate shall be recorded at length with the deed to which it relates....[30]

The "hereinafter provided" is found in the following section, where it is specified that acknowledgment of a written instrument executed within the Commonwealth shall be made before a justice of the peace or notary public.[31]  There is no catalog of the appropriate contents of an acknowledgment, but the statute provides forms in an appendix and specifies that

> The forms set forth in the appendix to this chapter for taking acknowledgments to deeds and other instruments and for certifying the authority of officers taking proofs or acknowledgments may be used; but this shall not prevent the use of any other forms heretofore lawfully used.[32]

The forms "heretofore lawfully used" would be those in use prior to the adoption of the

---

[29] No. 08-1261, 2009 WL 1458173 (Bankr. D. Mass.), *aff'd sub nom. Mortgage Electronic Registration Systems, Inc. v. Agin*, No. 09-CU-10988-PBS, 2009 WL 3834002 (D. Mass.).

[30] Mass. Gen. Laws ch. 183, § 29.

[31] Mass. Gen. Laws ch. 183, § 30.

[32] Mass. Gen. Laws ch. 183, § 42.

statutory forms in 1894.[33]

The statutory form appropriate to an individual granting a mortgage has the following content:

> On this _____ day of _____ 19__ before me personally appeared A B (or A B and C D), to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he(or they) executed the same as his (or their) free act and deed.[34]

That was the form involved in Judge Feeney's *Giroux* decision, the defect being that the parties' names were not inserted in the blank designed for that purpose.[35]  Judge Feeney held, and on appeal Judge Saris agreed, that the omission of the mortgagor's name in an acknowledgment is a material defect causing the questioned mortgage to be avoidable.  Debtor claims that the omission of the identifying data here should be controlled by the same principle.

Let me emphasize that the defect in *Giroux* was failure to satisfy the requirements of a statutory form; the present case is somewhat more complicated.  There is no requirement in the statutory form that the notary indicate the evidence of identification upon which reliance was had; that comes from another source.

Notaries public are appointed by the governor.[36]  Acting in his capacity as Supreme Executive Magistrate, Governor Romney issued Standards of Conduct for Notaries Public

---

[33] *See* New England Bond & Mortgage Co. v. Brock, 270 Mass. 107, 169 N.E. 803 (1930).

[34] Mass. Gen. Laws ch. 183 App. Form (13).

[35] 2009 WL 1458173 at *2.

[36] Mass. Gen. Laws Const. Amendment Art. 4.

in 2004.[37] It is the Executive Order which defined "acknowledgment" and "affirmation" as including a requirement that an individual be "identified by the notary public through satisfactory evidence of identity."[38] The acknowledgment clause involved here and quoted above is substantially identical to the form contained in the Executive Order.[39]

The question becomes a narrow one: Is the requirement for "satisfactory evidence of identity," imposed not by a statute but only by the Executive Order, to be treated as having the same dignity as a statutory requirement, so that the blank identifiers here will be treated as the same as the blank name of the mortgagors in *Giroux*? I think not. I believe that the Executive Order's requirements were precatory only, as is evidenced by its language:

> Nothing in this Executive Order supercedes the provisions of any court rule, including court forms, Massachusetts General Law, including but not limited to, chapter 183, section 42 or the forms set forth in the appendix thereto, or chapter 192, section 2, any Federal statute, or any regulation adopted pursuant to a Massachusetts or Federal statute.[40]

If not intended to supercede the statute — and I do not reach the question of the Governor's ability if he intended so to do[41] — then what is the purpose of the Executive

---

[37] Revised Executive Order No. 455 (04-04) (the "Executive Order").

[38] *Id*., § 2. An extensive definition of "satisfactory evidence of identity" also appears in that section.

[39] *Id*., § 5(d).

[40] *Id*., § 1(c).

[41] *See generally* Legislative Research Council, Report Relative to Gubernatorial Executive Orders (April 3, 1981); 38 Mass. Prac. § 53 ("The Supreme Judicial Court ... has had relatively few occasions to rule on formal gubernatorial executive orders. As a result, decisional authority is sparse and many fundamental questions involving the use and status of formal gubernatorial executive orders remain unanswered.")

Order? It is entitled "Standards of Conduct for Notaries Public" and imposes standards which "will be considered by the Governor in the selection, appointment, reappointment and removal of notaries public from their commissions."[42] It does not purport to invalidate documents in which the notary failed to follow the directives of the Executive Order.

This interpretation is consistent with the custom and usage of real estate practice in the Commonwealth. The title standards issued by the Real Estate Bar Association of Massachusetts ("REBA") provide that

> an acknowledgment the form of which substantially conforms with M.G.L. c. 183 §§ 29, 30, 33 and 42 or M.G.L. c. 222 § 11 and applicable case law but does not strictly comply with Executive Order 455 (03-13) is not on that account defective.[43]

The Massachusetts Deed Indexing Standards, issued by the Massachusetts Registers and Assistant Registers of Deeds Association provide that "failure to comply with the strict requirements of Executive Order 455 (03-13) shall not prevent a document from being recorded."[44]

I hold that absence of a statement of the "satisfactory evidence of identification" in the attestation does not affect the validity of the mortgage.

*The remaining issues*

Since I find no fatal error in the technicalities of the Mortgage, I must turn to the

---

[42] Executive Order, § 1(a).

[43] REBA Title Standard 16 ¶6, 28B Mass. Prac. Ch. 58 (supplement). The reference is to an earlier version of the Executive Order. REBA's Comment adds that "Failure to comply with [the Executive] Order does not affect the validity or recordability of deeds and other instruments." *Id*. at Supp. 230.

[44] Massachusetts Deed Indexing Standards (Version 4.0 - January 1, 2008) § 4-2.

areas where the parties do disagree. These are the usual "dollar sign" issues. Debtor asserts lack of knowledge as to the amounts outstanding under the Mortgage; says she will provide an appraisal to counter Movant's assertion of value (even though Movant took the value from Debtor's Schedule A); lacks knowledge as to the number and amount of pre- and post-petition defaults; and denies that Movant is not receiving adequate protection and that there is no equity.

None of these factual disputes were addressed at the hearing, which concerned itself entirely on the question of the validity of the mortgage. Of course, had Debtor prevailed on that issue, it would not be necessary to go further, but she did not. An evidentiary hearing is now necessary.

A pretrial conference will be scheduled in the ordinary course.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: June 1, 2010